IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTRON CANNON, | ) |
|         Plaintiff, | ) |
| vs. | ) Case No. 22 C 3289 |
| WALKER S. FILIP; NATHALIA PINEDA; KEVIN A. DRISCOLL; LISA M. RODRIGUEZ; CHRISTOPHER J. GRANDCHAMP; JOSEPH E. HOWE; and CITY OF AURORA, | ) |
|         Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Antron Cannon has sued several Aurora police officers and the City of Aurora, asserting claims arising from the officers' entry into his home and arrest of him on June 27, 2021. The defendants have moved for summary judgment on all of Cannon's claims. For the reasons stated below, the Court grants the defendants' motion.[1]

### Facts

The following facts are not genuinely disputed or, where genuinely disputed, are taken in the light most favorable to Cannon.

Cannon, his friend Sarah Taylor, and his cousin Jonathan were in Cannon's

---

[1] Mr. Cannon filed his lawsuit *pro se*, and the Court later recruited attorneys Keith Parr, Jonathan Turpin, and Jeremy Murphy of Locke Lord LLP to represent him. The Court thanks Mr. Parr, Mr. Turpin, and Mr. Murphy for their outstanding service as counsel for Mr. Cannon.

home in Aurora on the night of June 27, 2021. Cannon and Taylor were in a bedroom having intimate relations when Jonathan came into the room. Cannon told Jonathan to leave, and they got into an argument. Cannon testified that "I kicked [Jonathan] out of my house, because me and [Taylor] was naked." Cannon Dep. at 22. Later on, Cannon testified, Taylor "wanted to leave, but she couldn't walk. I told her she needed to catch a cab." *Id*. He testified that he did not want to drive her due to the fact that he had been drinking. *Id.* at 23. Cannon denies that he got physical with Taylor or that he bit or choked her, and he says he did not get into an argument with her. *Id.* at 23-24.

  Meanwhile, Jonathan called his aunt, Aunt Ray, and told her that Cannon was arguing with and hitting a woman in the basement of his home. Aunt Ray, who lives in Oswego, placed a 911 call around 9:40 p.m. She told the dispatcher that her nephew had told her that he had been in Cannon's house with Cannon and a woman and that Cannon was drunk, violent, and beating the woman. The dispatcher told Aunt Ray that officers were on the way to Cannon's home. After some time passed, the dispatcher called Aunt Ray back and said that the officers had knocked on the door to Cannon's home but no one had come to the door. After some discussion, Aunt Ray provided Jonathan's phone number at the dispatcher's request. The dispatcher called Jonathan, who also reported that a woman was in the home and that Cannon was beating her, but said he did not want to get involved. Jonathan advised the dispatcher that he was temporarily living at Cannon's home and that a door near the garage was unlocked, but he initially declined a request to give the police permission to enter the home. After further conversation, however (and, it appears, after talking on the other line to Aunt Ray), Jonathan gave the police permission to enter the home and described where the

unlocked door was.

There does not appear to be any sort of audio recording of what the dispatcher transmitted to the officers (and actually it's not clear there even was an audio transmission). Officer Filip testified that they "responded to a dispatch call for a domestic violence incident at 701 Hamiton" and that a call had "com[e] in about Mr. Cannon fighting with a female in his house." Filip Dep. at 7. He said that he "recall[ed] reading the dispatch notes that said he was out of control, beating her up." *Id.* Filip's partner, Officer Grandchamp, similarly testified that they were advised by dispatch "that Antron Cannon was in the house, and he was potentially harming a female . . . ." Grandchamp Dep. at 9.

Grandchamp testified that he went up to the house and knocked on the door several times for an extended period, but there was no answer. *Id.* He further testified, as did Officer Filip, that Filip later "received an answer briefly at the door" by Cannon, who used an expletive and told them to get a warrant. *Id.* at 10, 11; *see* Filip Dep. at 8. Both officers testified that after approaching the door they heard screaming or yelling coming from inside. Filip Dep. at 8; Grandchamp Dep. at 12.

The Court cannot find any evidence indicating that Jonathan's "consent" to enter the home was communicated to the officers at the scene, and the defendants do not argue that the officers' entry into the home was justified by any form of consent. Rather, the officers—including others in addition to Filip and Grandchamp who had arrived on the scene—conferred and determined there were exigent circumstances, specifically a woman inside who was potentially being physically harmed. *See* Grandchamp Dep. at 13-14; Filip Dep. at 8-11. The officers determined that the back door was unlocked and

3

entered via that door.

After entering, the officers quickly took Cannon into custody and handcuffed him. An officer escorted Taylor outside and interviewed her in a police car. The interview was audio and video recorded. Taylor, who said she had met Cannon a few days earlier via Facebook, said that while in the house, Cannon had choked her, called her names, and verbally and physically prevented her from leaving. She said that at some point she believed she lost consciousness due to the choking. Taylor also said that Cannon's cousin repeatedly told Cannon to stop, saying that if Cannon didn't stop he would kill Taylor, but that Cannon did not stop.

Cannon was charged with domestic battery. The charges were later dismissed. Cannon then filed this lawsuit *pro se*. As indicated earlier, the Court recruited *pro bono* counsel to represent him. Counsel filed an amended complaint, asserting claims against the officers for unlawful entry into and unlawful search of Cannon's home in violation of the Fourth Amendment (count 1) and for false arrest in violation of the Fourth Amendment (count 2). There is also a claim against Aurora for indemnification of the officers under 745 ILCS 10/9-102 (count 3). (The indemnification claim rises or falls with the other two claims.) The defendants have moved for summary judgment.

## Discussion

Summary judgment is appropriate "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, a court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party, in this case Cannon.

1.  **Warrantless entry (count 1)**

Under the Fourth Amendment, a warrantless entry into a person's home is presumptively unreasonable. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *see also Sutterfield v. City of Milwaukee*, 751 F.3d 542, 550 (7th Cir. 2014) ("At the core of the privacy protected by the Fourth Amendment is the right to be let alone in one's house."). There are, however, exceptions, one of which is the so-called exigent circumstances exception, which applies when "there is a pressing need for the police to enter" a home but not enough time to secure a warrant. *See, e.g., Sutterfield*, 751 F.3d at 553, 557. In particular, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

In assessing a claim of exigent circumstances, a court "analyze[s] the situation from the perspective of the officers at the scene," *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998), and determines whether, based on the information they had, there was "an objectively reasonable basis for believing" that a person inside the home was in danger or needed assistance. *Brigham City*, 547 U.S. at 406.

The Court concludes that the Aurora officers had, based on the information they had at the time, an objectively reasonable basis to believe that a woman inside the home—Taylor—was in danger and needed assistance. The officers had been advised that based on information from a relative who had been inside the home, Cannon was beating a woman and was "out of control." The Seventh Circuit has previously ruled that, in some cases, information learned from a 911 call alone may be enough, without more, to justify a warrantless entry, *see United States v. Richardson*, 208 F.3d 626, 630

5

(7th. Cir. 2000), but here there was more. First, and most importantly, the officers also testified that while standing just outside the home, they heard yelling coming from inside. Cannon denies that there was any yelling, and he attributes what the officers heard to consensual sexual activity. But a reasonable officer with the information the Aurora officers had at the time was not required to view it that way, and to a reasonable officer, any loud noise coming from inside would have tended to confirm what they had been advised about ongoing violence. In addition, there was information—gleaned from a neighbor—that no one had left the home, see Grandchamp Dep. at 28, which would have told a reasonable officer that the situation reported on the 911 call still existed—in other words, that both Cannon and the woman were still inside.

Domestic violence is a type of offense that can continue or get worse if the alleged victim remains with the suspect. See Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998); cf. Smith v. Kansas City, Mo. Police Dep't, 586 F.3d 576, 579 (8th Cir. 2009) (officer's warrantless entry into house of domestic violence suspect not justified by exigent circumstances where officer had no information that any potential victim was inside house or that the threat was ongoing). And that was the case here, or at least that was the way matters appeared from the standpoint of a reasonable officer on the scene. "If specific facts suggest a crime of domestic violence has been committed, that a threat of domestic violence still exists, or that a possible domestic abuse victim may be injured and in need of immediate aid, there may be grounds for a warrantless house entry." Anderson v. City of W. Bend Police Dep't, 774 F. Supp. 2d 925, 939 (E.D. Wis. 2011).

Domestic violence is a dangerous crime that can lead to serious injury or death.

6

"Domestic disturbances are highly volatile and involve large risks." *Cotten v. Miller*, 74 F.4th 932, 935 (8th Cir. 2023) (quoting *United States v. Henderson*, 553 F.3d 1163, 1165 (8th Cir. 2009)). Given the information the officers had, they were not required to wait outside Cannon's home until someone came to the door, nor were they required to take the time necessary to obtain a warrant. Their warrantless entry into the home was supported by exigent circumstances; no reasonable jury could find otherwise. The defendants are therefore entitled to summary judgment on count 1 of Cannon's amended complaint.

2. **Arrest (count 2)**

Following their lawful entry into Cannon's home, the officers placed him in handcuffs and ultimately arrested him for domestic battery. Law enforcement officers have probable cause to arrest an individual "when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (internal quotation marks and citation omitted).

Once the Aurora officers entered Cannon's home, they found Taylor and Cannon naked, and they could see bruises on Taylor's body. They immediately took Taylor outside the home and interviewed her. During the interview, which was video and audio recorded, Taylor said that Cannon had choked her until she went unconscious and that he had hit her. And Taylor and Cannon were the only two individuals in the house at the time of the officers' entry.

This information, alone and together with what was reported on the 911 call,

supported probable cause to believe that Cannon had committed a battery upon Taylor. This is so even if Cannon contends, and contended at the time, that all of his interactions with Taylor were consensual. In assessing probable cause, law enforcement officers may rely upon information obtained from an eyewitness or victim whose information appears to a reasonable person to be credible. *See Howard*, 883 F.3d at 707. Here it did; Taylor's statements to the police were corroborated by the information reported on the 911 call and the bruising that they observed on Taylor's body.

In sum, no reasonable jury could find that probable cause to arrest was lacking. The defendants are therefore entitled to summary judgment on count 2.

## Conclusion

For the reasons stated above, the Court grants the defendants' motion for summary judgment (dkt. no. 70) and directs the Clerk to enter judgment stating: Plaintiff's claims against defendants are dismissed with prejudice.

Date: August 19, 2024

_____
MATTHEW F. KENNELLY
United States District Judge